IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DANIELLE MAFFEO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Dagwoods North, LLC,<br><br>Defendant. | Case No.: 4:24-cv-03705-JD<br><br>**ORDER** |

This is a Fair Labor Standards Act ("FLSA") case. Plaintiff Danielle Maffeo ("Plaintiff" or "Maffeo") has filed a Renewed Motion for Conditional Certification of FLSA Collective Action under 29 U.S.C. § 216(b) among other matters. (DE 79.) Defendant Dagwoods North, LLC ("Defendant" or "Dagwoods"), has responded in opposition to Maffeo's motion (DE 83), and Maffeo has replied (DE 84). For the reasons below, the Court grants Maffeo's Renewed Motion for Conditional Certification of FLSA Collective Action and also finds equitable tolling is warranted.

### I.     BACKGROUND

**A.     Factual Background**

This action concerns allegations by Maffeo that Defendant engaged in unlawful wage-and-hour practices affecting a group of similarly situated employees. Maffeo seeks conditional certification of a collective action under 29 U.S.C. § 216(b) on behalf of herself and other Restaurant Servers employed by Defendant, alleging violations of the minimum-wage, tip-credit, and reimbursement provisions of the FLSA.

1

Maffeo began working for Defendant as a Restaurant Server in March 2022. (DE 70-1 ¶ 3.) Joanna Blazak ("Blazak") and Keely Campbell ("Campbell") were employed in the same capacity during the same period. (DE 71-1 ¶ 2; DE 73-1 ¶ 2.) Honie Kreischer ("Kreischer") worked as a Restaurant Server from November 2023 through March 2024. (DE 74-1 ¶ 2.) Maffeo and Blazak remain employed by Defendant. (DE 70-1 ¶ 3; DE 71-1 ¶ 3.) All three declarants attest that dozens of other Restaurant Servers were employed by Defendant during this same period. (*See* Maffeo Decl. ¶ 46, DE 79-1 at 10; Blazak Decl. ¶ 3, DE 79-2 at 1; Campbell Decl. ¶ 6, DE 79-3 at 2.)

Restaurant Servers, including Maffeo and the declarants, performed similar duties—serving food and beverages, engaging with customers, and performing non-tip-producing side work, such as cleaning and restocking. (*See* Maffeo Decl. ¶ 6, DE 79-1 at 2; Blazak Decl. ¶¶ 15–17, DE 79-2 at 3–4; Campbell Decl. ¶¶ 9–10, 17–20, DE 79-3 at 2–4.) Defendant paid all Restaurant Servers an hourly wage of $2.13 and claimed a tip credit under 29 U.S.C. § 203(m). (Maffeo Decl. ¶ 25, DE 79-1 at 6; Blazak Decl. ¶ 14, DE 79-2 at 3; *cf.* Campbell Decl. ¶ 25, DE 79-3 at 5.) These policies were uniformly implemented at Defendant's single restaurant location.

Maffeo and other declarants allege that Defendant failed to provide the notice required under the FLSA before taking a tip credit. (Maffeo Decl. ¶¶ 24–26, DE 79-1 at 6–7; Blazak Decl. ¶¶ 4–9, DE 79-2 at 1–2; *cf.* Campbell Decl. ¶ 26, DE 79-3 at 5.) They assert that they were not informed of the amount of the claimed tip credit, their right to retain tips (absent a valid, tip-pooling arrangement), or the legal requirement

that such notice must be provided for an employer to lawfully claim a tip credit. (Am. Collective Action Compl. ¶ 1, DE 103 at 1–2.)

Keith Stamps, Dagwoods' original General Manager when the restaurant opened in March 2022, hired multiple opt-in plaintiffs (*see* Campbell Decl. ¶ 5, DE 79-3 at 2), but this was not disclosed in Defendant's Rule 26(a) Initial or Supplemental Disclosures. Campbell, who was later promoted to an opening-shift supervisor in March 2023, asserts that Stamps never provided a tip-credit notice to any Restaurant Servers. (*Id.* ¶ 8, DE 79-3 at 2.) Defendant's owner, Jon Staton, acknowledged that a written tip-credit notice was not distributed until August 1, 2024, after this litigation commenced. (Staton Decl. ¶ 3, DE 28-2 at 2; *see* Blazak Decl. ¶¶ 6–7, DE 79-2 at 2.) According to former Kitchen Manager Martin Burke, General Manager Nicole Jones admitted in August 2024 that the restaurant had not been properly notifying employees of the tip credit and that legal counsel had provided a written notice for all Servers to sign. (Burke Decl. ¶ 7, DE 79-5 at 2.)

Maffeo also contends that Defendant required Restaurant Servers to spend more than 20% of their workweek performing non-tipped side work—including tasks performed before the restaurant opened to the public—without receiving full minimum-wage compensation. (Maffeo Decl. ¶¶ 10–24, 27–34, DE 79-1 at 2–8; Blazak Decl. ¶¶ 15–18, DE 79-2 at 3–4; Campbell Decl. ¶¶ 12–24, DE 79-3 at 3–5; Burke Decl. ¶¶ 12–15, DE 79-5 at 3–4.) Declarants state that Servers were scheduled to arrive at 10:00 a.m., while the restaurant did not open until 11:00 a.m., resulting in at least one hour of untipped work per shift. (Maffeo Decl. ¶¶ 13–22, DE 79-1 at 3–6;

Blazak Decl. ¶ 15, DE 79-2 at 3; Campbell Decl. ¶ 14, DE 79-3 at 3; Burke Decl. ¶ 14, DE 79-5 at 4.) Burke confirmed that most customers did not arrive until 11:30 a.m. or later. (Burke Decl. ¶ 14, DE 79-5 at 4.) After litigation began, Defendant modified its timekeeping procedures to compensate Servers at $7.25 per hour for pre-opening work. (Maffeo Decl. ¶ 51, DE 79-1 at 11; Blazak Decl. ¶¶ 19–20, DE 79-2 at 4; Campbell Decl. ¶¶ 25, 41, DE 79-3 at 5, 8–9; Burke Decl. ¶ 13, DE 79-5 at 4.) Nonetheless, Maffeo asserts that Restaurant Servers were not paid full minimum wage for the time spent on non-tipped duties that exceeded 20% of their weekly hours. (Maffeo Decl. ¶¶ 23, 28, DE 79-1 at 6, 7; Blazak Decl. ¶¶ 18–19, DE 79-2 at 4; Campbell Decl. ¶ 25, DE 79-3 at 5; Burke Decl. ¶¶ 13–15, DE 79-5 at 4.) Internal records support these assertions. (*See* DE 79-6 at 1–4; DE 79-8 at 1–2.)

Finally, Maffeo alleges that Defendant required Restaurant Servers to purchase mandatory uniforms and tools of the trade without reimbursement. (Maffeo Decl. ¶¶ 35–45, DE 79-1 at 8–10; Blazak Decl. ¶ 21, DE 79-2 at 5; Campbell Decl. ¶ 28, DE 79-3 at 5–6; Burke Decl. ¶ 11, DE 79-5 at 3.) Defendant's written policy required the purchase and use of Dagwoods-branded shirts and aprons for each shift. (*See* DE 79-7 (appearance policy); DE 79-9 (purchase price of Dagwoods shirts for employees).) Maffeo, Campbell, and Blazak all state that they bought multiple shirts for $15 each, as confirmed by Defendant's written policy. (Maffeo Decl. ¶ 36, DE 79-1 at 8–9; Blazak Decl. ¶ 21, DE 79-2 at 5; Campbell Decl. ¶ 28, DE 79-3 at 5–6.) Servers were also required to supply their own pens, paper, and server books, with out-of-pocket expenses averaging $16. (Maffeo Decl. ¶¶ 40–45, DE 79-1 at 9–10; Campbell

4

Decl. ¶¶ 30–31, DE 79-3 at 6.) According to Maffeo, these items were used exclusively for the benefit of the employer, and the Restaurant Servers were not reimbursed. (*See* Maffeo Decl. ¶ 41, DE 79-1 at 9.)

**B.    Procedural Background**

On June 27, 2024, Maffeo, on behalf of herself and others similarly situated, filed a collective action complaint against Defendant, asserting federal minimum-wage violations arising from Defendant's alleged misuse of the tip credit, failure to provide statutorily required notice, assignment of excessive non-tipped duties, and failure to reimburse uniform and tool-related expenses. (Compl., DE 1.)

Defendant answered the Complaint on July 27, 2024. (Answer, DE 9.) On September 20, 2024, Defendant moved for partial judgment on the pleadings seeking dismissal of Count II concerning the so-called "80/20/30 Rule," invalidated by the Fifth Circuit. (DE 40.) Maffeo did not oppose the motion, and the Court dismissed Count II by a Text Order dated March 24, 2025. (DE 89.)

On October 4, 2024, Maffeo moved for leave to amend the complaint, seeking to remove the dismissed 80/20/30 claim, add a claim under the Dual Jobs regulation, and join Jonathan Staton, Dagwoods' owner, as an individual defendant. (DE 49.) The Court granted that motion on April 1, 2025. (DE 90.) Maffeo thereafter filed her Amended Complaint on July 9, 2025. (*See* Am. Collective Action Compl., DE 103.) Defendant filed its amended answer on July 23, 2025 (Am. Answer, DE 110.)

The operative Amended Complaint alleges three FLSA collective action counts against Dagwoods and Staton:

5

1. failure to provide proper tip credit notice (as to the Tip-Credit Notice Collective);

2. failure to pay minimum wages for excessive non-tipped work under the Dual Jobs regulation (as to the Dual-Jobs Collective); and

3. failure to reimburse uniform and tools-of-the-trade expenses resulting in sub-minimum wage compensation (as to the Uniform-and-Tool Reimbursement Collective).

(Am. Collective Action Compl., DE 103.)

On March 14, 2025, the Court denied Maffeo's initial Motion for Conditional Certification (DE 15) without prejudice, citing Maffeo's then-ongoing change in legal representation and the withdrawal of prior counsel. (DE 63.) The Court concurrently granted Maffeo's Motion to Substitute Counsel (DE 42) and vacated the prior *pro hac vice* admission of Jordan Richards ("Richards"), granting leave to reapply. (DE 63.) *Pro hac vice* motions for Andrew Frisch and Richards were then granted. (DE 91.)

On April 9, 2025, Maffeo filed her Renewed Motion for Conditional Certification of essentially the same three collectives pleaded in the original Complaint. (DE 79 at 3; *compare id.*, *with* Compl. ¶ 6 , DE 1 at 2–3.) Defendant filed its opposition on April 23, 2025. (DE 83.) Maffeo filed a reply on April 29, 2025. (DE 84.) Along with seeking conditional certification, Maffeo requests that the Court equitably toll the statute of limitations for the proposed collective members, citing delays associated with the substitution of counsel, the denial of the initial certification motion without prejudice, and the time required to refile under newly admitted counsel. (DE 79 at 24–32; *see* DE 84 at 15–16.)

6

On July 9, 2025, Defendant filed a Motion for Leave to Supplement its Opposition, citing a recent district court decision from the Southern District of Alabama and newly discovered evidence allegedly affecting Maffeo's credibility. (DE 101.) On July 22, 2025, Maffeo filed an unopposed Motion to Hold the Discovery Deadline and Dispositive Motion Deadline in the Amended Conference and Scheduling Order in Abeyance.[1] (DE 107.)

Maffeo's Renewed Motion for Conditional Certification, along with the request for equitable tolling, is now ripe for disposition.

## II. LEGAL STANDARD

### A. The FLSA Collective-Action Certification Process

Under the FLSA, private plaintiffs may bring a collective action on their own behalf and on behalf of other employees "similarly situated." 29 U.S.C. § 216(b) (2018). The statute provides:

> An action to recover the liability prescribed in [§ 216(b)] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The Supreme Court has emphasized the importance of "employees receiving accurate and timely notice concerning the pendency of the collective action, so that

---

[1] In light of the Court's ruling herein, the Court denies the motion as moot and grants the parties leave to confer and submit an amended scheduling order for the Court's consideration.

they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The Court further held that district courts have discretionary authority to facilitate notice to potential plaintiffs. *Id.* at 169, 174.

Although neither the Supreme Court nor the Fourth Circuit has adopted a definitive approach to certifying collective actions under the FLSA, most federal courts—including those in this Circuit—have adopted the two-step certification process outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-482, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021); *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009).

At the first step, known as the "notice stage," the court makes a preliminary determination—typically before substantial discovery—whether the named plaintiff has made "a modest factual showing" that other potential plaintiffs are similarly situated. *Amoko v. N&C Claims Serv., Inc.*, 577 F. Supp. 3d 408, 415 (D.S.C. 2021); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367–68 (D.S.C. 2012). If so, the court conditionally certifies the collective action and authorizes court-supervised notice to potential opt-in plaintiffs. *Id.* at 368.

At the second stage, usually triggered by a motion to decertify following discovery, the court applies a more rigorous standard to determine whether the named and opt-in plaintiffs are in fact similarly situated. *Amoko*, 577 F. Supp. 3d at 415. If the court concludes that they are not, it may decertify the collective action,

dismiss the opt-in plaintiffs without prejudice, and allow the named plaintiff(s) to proceed individually. *Id.* at 413–414.

## B. Equitable Tolling

Equitable tolling is an extraordinary remedy that permits a court to extend a statute of limitations when a litigant, despite diligent pursuit of his or her rights, is prevented from timely filing by extraordinary circumstances. The doctrine is applied sparingly and only where two elements are satisfied: (1) the party seeking tolling has pursued his or her rights diligently; and (2) some extraordinary circumstance prevented the timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016); *Holland v. Florida*, 560 U.S. 631, 649 (2010).

Under the FLSA, claims for unpaid minimum wage or overtime are generally subject to a two-year limitations period, extended to three years for willful violations. *See* 29 U.S.C. § 255(a). For opt-in plaintiffs in collective actions under 29 U.S.C. § 216(b), the statute of limitations continues to run until each individual files a written consent to join the action. *See* 29 U.S.C. § 256(b).

Courts recognize that equitable tolling may be appropriate in FLSA collective actions where delays in the issuance of notice or the filing of consent forms are caused by circumstances beyond the plaintiffs' control, including delays attributable to the court or the procedural posture of the case. Tolling is not automatic and must be assessed on a case-by-case basis, accounting for the equitable interests at stake. *See Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 710 (D.S.C. 2015).

The decision to apply equitable tolling lies within the Court's sound discretion. In exercising that discretion, courts evaluate whether tolling is necessary to prevent unfair prejudice to prospective opt-in plaintiffs whose claims might otherwise be time-barred through no fault of their own, while also considering whether tolling would unduly prejudice the defendant. *See Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 167 (4th Cir. 2001); *Helmert v. Butterball, LLC*, 805 F. Supp. 2d 655, 669 (E.D. Ark. 2011).

### III.  DISCUSSION

#### A.  Conditional Certification of FLSA Collective Action

Maffeo seeks conditional certification of three FLSA collectives who were allegedly subject to, among other things, uniform, wage, and tip practices that violated the FLSA. (DE 79.) Conditional certification of a collective action under the FLSA is governed by 29 U.S.C. § 216(b). Congress enacted § 216(b) to enable plaintiffs to benefit from "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc.*, 493 U.S. at 170 (interpreting § 216(b) as incorporated into the Age Discrimination in Employment Act). The Supreme Court emphasized that the primary objective of § 216(b) is judicial efficiency and reaffirmed the court's "managerial responsibility . . . to assure that the [joinder of additional parties] is accomplished in an efficient and proper way." *Id.* at 170–71; *see Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir. 1992) (explaining that the decision to grant or deny certification lies within the district court's discretion).

Defendant opposes Maffeo's Renewed Motion for Conditional Certification and argues, among other things, that the Court should deny the motion based on

reasoning applied by *this* Court in *Burgess v. Cherokee County School District*, 2021 U.S. Dist. LEXIS 269496 (D.S.C. July 20, 2021). Defendant further contends that the Court should reject the two-step certification process established in *Lusardi* and apply a more rigorous standard at the outset. Defendant also raises several factual and evidentiary objections concerning Maffeo's showing of similarity, including the adequacy of her declarations, the absence of additional opt-in plaintiffs, the breadth of the proposed collectives, and the existence of competing evidence. After considering the full record and applicable legal authority, the Court finds that conditional certification is warranted.

To begin with, the Court declines to abandon the *Lusardi* framework. Courts within this Circuit—including this one—routinely apply the two-step procedure, under which plaintiffs at the notice stage must make only a modest factual showing that they and other putative collective members are similarly situated. *See Purdham*, 629 F. Supp. 2d at 547; *Winks*, 2021 WL 2482680, at *2. More recently, the court in *Firestone v. Food Concepts, LLC*, 2024 WL 578454, at *3 (D.S.C. Feb. 13, 2024), reaffirmed this standard and expressly rejected arguments for heightened scrutiny, holding that "district courts within the Fourth Circuit—since the *Swales* decision—have uniformly followed the approach set forth in *Lusardi*."

Defendant's reliance on *Burgess* is unpersuasive. There, the plaintiff—an exempt public school teacher—sought to represent other teachers based on a claim that she needed to perform unpaid duties outside the classroom. The court found no support for a district-wide policy, no corroborating declarations, and significant

11

individualized inquiries related to FLSA exemption status. *Burgess*, 2021 U.S. Dist. LEXIS 269496, at *9–10. By contrast, Maffeo has submitted four consistent declarations—her own and those of three other former Dagwoods employees—attesting to uniform pay practices affecting non-exempt tipped workers across three distinct theories of FLSA violation. (*See* DE 79-2 through 79-5.)

Defendant raises more objections, none of which preclude conditional certification at this preliminary stage.

First, Defendant contends that Maffeo has not shown meaningful interest from other employees in joining this litigation. However, courts have routinely held that evidence of other opt-ins is not required to obtain conditional certification. *See Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012) ("The fact that more individuals have not joined the lawsuit does not preclude conditional certification."). Maffeo has submitted credible declarations reflecting firsthand knowledge of pay practices shared across similarly situated coworkers. That is sufficient to permit notice under § 216(b).

Second, Defendant asserts that the declarations are boilerplate and lack detail. To the contrary, each declarant provides specific factual allegations concerning their pay rate, job duties, lack of tip-credit notice, and uniform or tool-related expenses. While similar in form, the declarations describe consistent policies and treatment, which supports—rather than undermines—their evidentiary value. *See Hunt v. Flight Servs. & Sys., Inc.*, 2008 WL 318334, at *4 (W.D.N.Y. Feb. 4, 2008) (noting that similarity in declarations may evidence common policy).

Third, Defendant points to several competing declarations from current employees who dispute Maffeo's allegations and assert lawful pay practices. These "competing affidavits," sometimes referred to as "happy camper" declarations, do not prevent conditional certification. Courts at this stage do not resolve factual disputes or make credibility determinations. *See Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 304 (W.D.N.C. 2013) (noting that "conflicting evidence is not determinative at the notice stage").

Fourth, Defendant argues that the proposed collectives are overbroad, as they may encompass employees with varied roles, schedules, or reimbursement experiences. Even so, the Court need not resolve individualized distinctions at this stage. The conditionally certified collectives may later be refined or narrowed at the decertification phase following discovery. *See Pelczynski*, 284 F.R.D. at 368.

Fifth, Defendant asserts that it maintained written policies that comply with the FLSA, including tip-credit notices and reimbursement guidelines. The existence of such policies does not foreclose certification where plaintiffs allege, with evidentiary support, that the policies were inconsistently implemented or routinely disregarded in practice. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 471 (E.D.N.C. 2010) (noting that official policies do not insulate employers from FLSA collective claims where employees allege actual violations).

The declarations submitted reflect common employment experiences across multiple individuals, each describing the same categories of alleged wage violations under shared working conditions. These consistent allegations—relating to pay below

13

the minimum wage, lack of proper tip-credit notice, uniform deductions, and the performance of non-tipped duties—are sufficient to demonstrate that the putative collective members are similarly situated for purposes of conditional certification.

Having reviewed the record, the Court finds that Maffeo has satisfied her burden to make a modest factual showing that other employees are similarly situated with respect to the alleged FLSA violations. Conditional certification is, therefore, appropriate.

Accordingly, the Court grants Maffeo's motion and authorizes notice to the following collectives:

    1.    **Tip-Credit Notice Collective**: All current and former tipped employees of Dagwoods North, LLC, who were paid a direct hourly wage less than the federal minimum wage and did not receive a proper tip credit notice under 29 U.S.C. § 203(m) at any time within the three years preceding the issuance of notice.

    2.    **Dual-Jobs Collective**: All current and former tipped employees who were paid a direct hourly wage less than the federal minimum wage and who regularly performed non-tipped duties that were unrelated to their tipped occupation during the same time.

    **3.**    **Uniform-and-Tool Reimbursement Collective**: All current and former tipped employees who were paid a direct hourly wage less than the federal minimum wage and needed to purchase or maintain uniforms or tools of the trade without reimbursement, such that their effective wages fell below the minimum wage.

## B.  Equitable Tolling

Having granted Maffeo's Renewed Motion for Conditional Certification, the Court turns to Maffeo's request for equitable tolling of the FLSA statute of limitations for putative collective members. For the reasons below, and in light of the procedural posture of the case and the circumstances surrounding Maffeo's legal representation, the Court finds that equitable tolling is warranted.

Equitable tolling is an extraordinary remedy that extends statutory deadlines only when the party seeking relief shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis.*, 577 U.S. at 256; *Holland*, 560 U.S. at 649. Under the FLSA, the limitations period for each opt-in plaintiff continues to run until that individual files a written consent to join the case. 29 U.S.C. § 256(b). Thus, delays in issuing notice may result in potential claims being extinguished before putative plaintiffs have the opportunity to opt in. Courts within this Circuit have recognized that equitable tolling is appropriate in those cases, particularly where the delay is attributable to judicial or procedural factors outside the plaintiff's control. *See Chao*, 291 F.3d at 283; *Irvine*, 132 F. Supp. 3d at 710.

In this case, as recounted above, Maffeo initially moved for conditional certification on November 8, 2024. (DE 15.) However, while that motion was pending, Defendant filed a motion to disqualify Maffeo's counsel (DE 37), and related motions were filed concerning the substitution of counsel (DE 42), *pro hac vice* admission (DE 41), and a stay pending resolution of the disqualification issue (DE 48). On March 14, 2025, the Court resolved the disqualification and substitution issues, granted the

motion to substitute counsel (DE 63), vacated the earlier *pro hac vice* admission of Richards, and denied Maffeo's original conditional-certification motion without prejudice. Maffeo's renewed motion for conditional certification (DE 79) was filed on April 9, 2025.

The record reflects that Maffeo diligently pursued her claims throughout this period. Upon the Court's order permitting substitution of counsel and *pro hac vice* filings, Maffeo promptly secured new counsel and refiled her motion. (*See* DE 91, granting DE 65.) The delay was not attributable to any neglect or tactical delay by Maffeo but to contested legal representation and the resulting uncertainty surrounding who could properly advance the case on her behalf. These circumstances rise to the level of the "extraordinary impediment" contemplated by the Supreme Court. *See Menominee Indian Tribe of Wis.*, 577 U.S. at 256.

The Court also finds that tolling is necessary to prevent unfair prejudice to putative opt-in plaintiffs. Because of the delay caused by the pending disqualification and substitution proceedings, collective members did not receive notice of this action for several months after the original motion was filed. Without tolling, those employees may be time-barred through no fault of their own. *See Helmert*, 805 F. Supp. 2d at 669. Conversely, there is no showing that tolling would unduly prejudice Defendant, as it retains the opportunity to challenge liability and the composition of the collective at a later stage.

Accordingly, the Court exercises its discretion to toll the statute of limitations for putative collective members from **November 8, 2024** (the date of Maffeo's original

16

motion for conditional certification), until the date of this Order. *See Irvine*, 132 F. Supp. 3d at 710 (granting equitable tolling for the period between the initial certification motion and the court's ruling on the renewed motion).

## C. Form of Notice and Other Matters

Maffeo has submitted a proposed notice (DE 79-6) to be disseminated to members of the conditionally certified collectives. Defendant objects to several aspects of the proposed notice, including its content, scope, and method of distribution. In her reply, Maffeo responds to Defendant's objections, maintains that the proposal reflects standard FLSA notice practices, and expresses willingness to adopt certain modifications to preserve neutrality and accuracy.

The Court has reviewed the proposed notice and the parties' respective submissions and finds that, although the overall structure and intent of the notice are consistent with notices routinely approved in FLSA collective actions, certain revisions are warranted to ensure clarity, neutrality, and procedural fairness.

Specifically, Defendant's concerns regarding potentially suggestive language and the need for clarifying disclaimers—such as a statement that the Court has not ruled on the merits or liability—are well-taken and consistent with best practices. The Court also finds that the notice should more clearly distinguish the conditionally certified collectives and describe the criteria for inclusion in each of them. At the same time, the Court is not persuaded that dissemination via email or text message is categorically inappropriate, particularly given the nature of the workforce at issue.

17

Nor is the Court persuaded that a reminder notice is improper, provided it is limited in frequency, neutrally worded, and reasonably timed.

In addition, while Maffeo's proposed notice identifies counsel of record and includes contact information for inquiries, the Court finds it appropriate to confirm that designation as part of its supervisory authority over this collective action. Accordingly, the Court formally designates Maffeo's current counsel of record as collective counsel for purposes of this litigation. The final notice shall identify these attorneys, including their firm name, mailing address, phone number, and email address, as the legal representatives for all individuals who choose to join the case. Nothing in this designation precludes the Court from revisiting or modifying collective counsel status upon motion and good cause shown.

Because the Court's ruling has now resolved the scope of conditional certification and collective definitions, the most efficient path forward is for the parties to meet and confer in good faith to revise the proposed notice and notice protocol in light of the Court's findings. The Court will retain supervisory authority over the final form and dissemination process.

Accordingly, the parties are **directed to meet and confer** and to submit a **joint proposed notice and notice plan** consistent with this Order within **fourteen (14) days**. The revised submission shall:

1. Include clarifying disclaimers that the Court has not ruled on the merits or liability;

2. Accurately reflect the collective definitions certified by the Court;

3. Identify and explain the proposed channels for distribution (e.g., mail, email, text), and justify any use of electronic notice;

18

4. Address the timing and form of any reminder notice;

5. Propose a reasonable opt-in period, not to exceed sixty (60) days unless justified;

6. Identify designated collective counsel, with full contact information, as the legal representative for opt-in plaintiffs.

If the parties cannot reach an agreement on any aspect of the notice or protocol, they shall identify the disputed provisions in a joint filing and briefly state their respective positions. The Court will then resolve the outstanding issues.

## IV.  CONCLUSION

For these reasons and in accordance with the findings and analysis contained in this Order, it is hereby ORDERED that:

1. Plaintiff Danielle Maffeo's Renewed Motion for Conditional Certification and for Equitable Tolling (DE 79) is **GRANTED**, as follows:

   a. The Court conditionally certifies the following three collectives under 29 U.S.C. § 216(b) as defined herein, and authorizes Court-supervised notice to all members of these conditionally certified collectives:

      i. Tip-Credit Notice Collective,

      ii. Dual-Jobs Collective, and

      iii. Uniform-and-Tool Reimbursement Collective.

   b. The statute of limitations for all putative collective members is **EQUITABLY TOLLED** from November 8, 2024, through the date of this Order.

   c. Within **fourteen (14) days of the entry of this Order**, the parties shall:

      i. meet and confer in good faith and

      ii. file a joint proposed notice and notice-distribution plan that complies with the directives set out above.

19

        iii.    If the parties cannot agree on any provision, they shall submit a joint filing identifying each disputed issue and their respective positions (not to exceed five (5) pages per side). The Court will thereafter resolve any outstanding disputes.

    d.    Maffeo's current counsel of record are hereby designated as collective counsel for all individuals who elect to opt in, subject to further order of the Court.

    e.    The Court retains jurisdiction to supervise notice, to modify the scope of any collective, and to adjudicate any subsequent motion for decertification or other dispositive or non-dispositive relief.

2.    Defendant's Motion for Leave to Supplement Its Opposition (DE 101) and Plaintiff's Unopposed Motion to Hold the Discovery Deadline and Dispositive Motion Deadline in the Amended Conference and Scheduling Order in Abeyance (DE 107) are **DENIED AS MOOT** in light of the rulings herein.

**AND IT IS SO ORDERED**.

                                      Joseph Dawson, III
                                      United States District Judge

August 1, 2025
Florence, South Carolina